IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil No. |
| v. | ) |
| | ) |
| HOTSPOT TAN, INC. | ) |
| 1012 Crain Hwy South | ) |
| Glen Burnie, MD 21061 | ) |
| | ) |
| and | ) |
| | ) |
| PAUL HUGHES, JR. | ) |
| 14225 Day Farm Rd. | ) |
| Glenelg, MD 21737 | ) |
| | ) |
| Defendants. | ) |
| | ) |

**COMPLAINT FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF**

Plaintiff, the United States, at the request of the Chief Counsel of the Internal Revenue Service, a delegate of the Secretary of the Treasury, and at the direction of the Attorney General of the United States, brings this action to enjoin Hotspot Tan, Inc. ("Hotspot Tan") and the company's owner, Paul Hughes, Jr. (collectively, "Defendants") from accruing further unpaid federal employment tax liabilities and further interfering with the enforcement of the internal revenue laws.

**JURISDICTION AND VENUE**

1.  This Court has jurisdiction over this civil action pursuant to 26 U.S.C. § 7402(a) and 28 U.S.C. §§ 1340 and 1345.

2. Venue is proper under 28 U.S.C. §§ 1391 and 1396 because Hotspot Tan is headquartered and operates within this judicial district, and because Paul Hughes Jr. resides within this judicial district.

**PARTIES**

3. Plaintiff is the United States of America.

4. Defendant Hotspot Tan is a corporation organized under the laws of Maryland and operating in that State. The company does business in Anne Arundel County and Carroll County, in Maryland.

5. Defendant Paul Hughes Jr. ("Hughes") is the owner of Hotspot Tan and was responsible for its operation at all times relevant to this suit. Hughes resides in Howard County, Maryland.

**BACKGROUND FACTS**

6. At all times relevant to this action, Hotspot Tan has had employees and, as an employer, has been subject to the payroll tax obligations imposed by federal law, including the duties to:

a. File with the Internal Revenue Service ("the Service" or "IRS") its Employer's Quarterly Federal Tax Returns (IRS Form 941) and annual Employer's Federal Unemployment (FUTA) Tax Returns (IRS Form 940), *see* 26 U.S.C. § 6011; 26 C.F.R. § 31.6071(a)-1.

b. Withhold its employees' federal income and Federal Insurance Contributions Act ("FICA") taxes, and pay over to the IRS those withholdings, along with the employer's own FICA and Federal Unemployment Tax Act ("FUTA") taxes, *see* 26 U.S.C. §§ 3102, 3111, 3301, and 3402;

  c. Make periodic deposits of the withheld federal income and employment taxes, as well as its share of employment taxes, in an appropriate federal depository bank in accordance with applicable Treasury regulations, *see* 26 U.S.C. §§ 6302, 6157; 26 C.F.R. § 31.6302-1; and

  7. Since the second quarter of 2015, Hotspot Tan has repeatedly failed to make timely and adequate federal employment tax deposits.  A delegate of the Secretary of the Treasury properly made assessments against Hotspot Tan for unpaid federal employment taxes on the dates, in the amounts, and for the taxable periods set forth below:

| Type of Tax | Tax Period Ending | Assessment Date | Amount of Assessments | Unpaid Balance as of September 30, 2018 |
|---|---|---|---|---|
| WT-FICA (Form 941) | 06/30/2015 | 08/31/2015 | $3,931.56 | $2,914.57 |
| WT-FICA (Form 941) | 09/30/2015 | 11/30/2015 | $3,183.21 | $4,945.61 |
| WT-FICA (Form 941) | 12/31/2015 | 02/29/2016 | $3,236.59 | $3,168.13 |
| WT-FICA (Form 941) | 03/31/2016 | 05/30/2016 | $2,656.40 | $4,065.30 |
| WT-FICA (Form 941) | 06/30/2016 | 08/29/2016 | $3,479.58 | $5,264.83 |
| WT-FICA (Form 941) | 09/30/2016 | 11/28/2016 | $3,607.01 | $5,305.07 |
| WT-FICA (Form 941) | 12/31/2016 | 02/27/2017 | $2,751.90 | $3,942.58 |
| WT-FICA (Form 941) | 03/31/2017 | 05/29/2017 | $2,070.93 | $2,534.86 |
| WT-FICA (Form 941) | 06/30/2017 | 08/21/2017 | $3,073.56 | $3,636.97 |
| WT-FICA (Form 941) | 09/30/2017 | 11/27/2017 | $2,823.83 | $3,659.51 |
| WT-FICA (Form 941) | 12/31/2017 | 03/05/2018 | $2,211.47 | $2,426.69 |
| WT-FICA (Form 941) | 03/31/2018 | 05/28/2018 | $2,229.77 | $2,366.38 |
| WT-FUTA (Form 940) | 12/31/2015 | 02/29/2016 | $368.92 | $507.26 |
| WT-FUTA (Form 940) | 12/31/2017 | 03/05/2018 | $264.69 | $265.94 |
| | | | **Total** | **$45,003.70** |

  8. As a result of its failure to pay the above-described assessments, Hotspot Tan was indebted to the United States for federal employment taxes in the total amount of $45,003.70 as

of September 30, 2018, along with the statutory additions to tax that have accrued since that date and as will continue to accrue as provided by law.

9. Hughes has been responsible for the company's failure to timely file its federal employment tax returns and pay its federal employment tax liabilities during all relevant times.

10. Since 2015, the IRS has been attempting to bring Hotspot Tan into compliance with its federal employment tax obligations. These efforts have included:

   a. Multiple in-person visits to Hotspot Tan's places of business to discuss the company's accumulating federal employment tax liabilities;

   b. Numerous notices and letters to Hotspot Tan and Hughes with respect to unpaid balances, demanding payment;

   c. Recording Notices of Federal Tax Lien against Hotspot Tan for all of the relevant periods described in paragraph 7, above;

   d. Notifying Hotspot Tan of the IRS's intent to levy and hand-delivering Form Letter 903 ("You Haven't Deposited Federal Employment Taxes"), which is used to place taxpayers on notice of the Government's right to seek a civil injunction;

   e. Levying upon corporate bank accounts of Hotspot Tan;

11. Despite the extensive administrative efforts detailed above, the IRS has not been able to bring Hotspot Tan into compliance with its federal employment tax obligations.

12. When the IRS levied Hotspot Tan's corporate accounts, the levies returned minimal funds.

13. Hotspot Tan's failure from 2015 forward to meet its federal employment tax obligations has produced ever-increasing, or "pyramiding," tax liabilities.

## INJUNCTION PURSUANT TO 26 U.S.C. SECTION 7402(a)

14. Under 26 U.S.C. § 7402(a), this Court may issue injunctions as may be necessary or appropriate for the enforcement of the internal revenue laws.

15. Defendants Hotspot Tan and Hughes have substantially interfered and continue to substantially interfere with the internal revenue laws by repeatedly failing to collect or pay over to the IRS Hotspot Tan's employment taxes.

16. "Taxes are the lifeblood of government, and their prompt and certain availability an imperious need." *Bull v. U.S.*, 295 U.S. 247, 259 (1935). Thus, the Defendants' failure to promptly meet their tax payment obligations has caused the United States irreparable harm, including but not limited to:

   a. The loss of tax revenue, amounting to $45,003.70 as of September 30, 2018, including the loss of the withheld employee income and FICA taxes for which the employees have already received credit;

   b. The drain on limited IRS resources due to the required oversight of Hotspot Tan; and

   c. The harm to the tax system as a whole, when competitors and the public see Hotspot Tan's chronic disregard of the federal tax laws that others follow.

17. Absent court intervention, the United States lacks an adequate legal remedy to prevent additional pyramiding of employment taxes owed by Hotspot Tan. The IRS has exhausted its administrative abilities to compel the company to pay its tax liabilities and comply with the internal revenue laws.

17613558.1

18.     The injury to the United States outweighs any potential harm to Hotspot Tan and Hughes.  Defendants have no right to operate in chronic non-compliance with federal tax laws and thus do not suffer a cognizable harm if precluded from doing so.

19.     An injunction in this case will serve the public good.  The efficacy of the federal tax system relies upon employers to collect and remit federal employment taxes to the United States.  Defendants' failure to make employment tax deposits undermines the system of tax collection because it gives Hotspot Tan an unfair economic advantage over competitors who comply with the law.  Enjoining Defendants would protect the public interest in the fair administration of the internal revenue laws and in fair competition by halting their wrongful practices.

20.     In the absence of an injunction backed by the Court's contempt powers, Defendants are likely to continue to obstruct and interfere with the enforcement of the internal revenue laws by pyramiding employment taxes to the detriment of the United States.

WHEREFORE, the United States prays that the Court enter a permanent injunction against the Defendants that requires them to:

A.      Deposit withheld employee income taxes, withheld employee FICA taxes, and employer FICA taxes, in an appropriate federal depository bank, in accordance with federal deposit regulations;

B.      Deposit federal unemployment taxes each quarter in an appropriate federal depository bank, in accordance with federal deposit regulations;

C.      Timely pay all outstanding liabilities due on each return required to be filed herein;

D.  Be prohibited from assigning any property, paying other creditors or transferring funds until all withholding liabilities, employment taxes and income taxes are first properly deposited or paid to the IRS; and

E.  Sign and deliver affidavits to the Internal Revenue Service, no later than the 20th day of each month, stating that the requisite deposits of withheld income tax, withheld FICA tax, employer FICA tax, and unemployment tax have been made in a timely manner.  These affidavits are to be delivered to the attention of Victoria Wright, Revenue Officer, 1260 Maryland Avenue, Hagerstown, MD 21740, or to such other addressee and location designated by the IRS

F.  Notify the IRS of any future conduct by Defendants related to the withholding or payment of employment or corporate income tax, with respect to any company that Defendants may become involved with.  This obligation includes, though is not limited to, an affirmative duty upon Paul Hughes, Jr. to notify the IRS or a designated revenue officer of any new business, whether involving tanning services or not, that he may acquire, manage, create, or work for in the next five (5) years.

The United States further prays that the Court retain jurisdiction over this case for the purpose of enforcing any injunction entered in this civil action; and for such other and further relief as the Court may deem to be just and proper.

//


//


//

17613558.1

Date:  May 21, 2019

                              RICHARD E. ZUCKERMAN
                              Principal Deputy Assistant Attorney General

                              /s/ Nishant Kumar
                              NISHANT KUMAR
                              Trial Attorney, Tax Division
                              U.S. Department of Justice
                              P.O. Box 227
                              Washington, D.C.  20044
                              202-514-2986 (v)
                              202-514-6866 (f)
                              Nishant.Kumar@usdoj.gov